IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| ELIZABETH WEGIENKA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF WEST POINT, GEORGIA,<br><br>    Defendant. | Civil Action File No.<br><br>3:23-cv-00141-TCB-RGV |

**DEFENDANT CITY OF WEST POINT'S SPECIAL APPERANCE MOTION TO DISMISS AND BREIF IN SUPPORT**

COMES NOW **CITY OF WEST POINT, GEORGIA**, Defendant in the above-captioned matter, and *appearing specially*, files this Motion to Dismiss the complaint. In support thereof, Defendant shows this honorable Court as follows:

## I.   BACKGROUND

Plaintiff Elizabeth Wegienka filed her Complaint for Damages and Equitable Relief on June 9, 2023 in the Superior Court of Troup County. (Plaintiff's Complaint at 1). Plaintiff makes two claims, one alleging a violation of the Georgia Whistleblower Act, and the other a violation of Title VII of the Civil Rights Act of 1964. (Plaintiff's Complaint at 10, 12). Both claims arise out of the same incident

1

occurring on August 8, 2022. (Plaintiff's Complaint, ¶ 30). On that date, Plaintiff and a team of West Point police officers went to a residence to serve a warrant authorizing the arrest of an armed robbery suspect and a search for the firearm he may have used in the crime. (Plaintiff's Complaint, ¶¶ 26, 29). The officers knocked on the door and received no response. (Plaintiff's Complaint, ¶ 33). Plaintiff then contacted a superior officer, who directed her to force entry into the residence and serve the warrant. (Plaintiff's Complaint, ¶ 35). Plaintiff, believing this to be unconstitutional, refused. (Plaintiff's Complaint, ¶ 37). The officers then left the scene. (Plaintiff's Complaint, ¶ 38). The next day, Plaintiff was placed on administrative leave pending an investigation, which ultimately resulted in her termination. (Plaintiff's Complaint, ¶ 40–41). Plaintiff then filed this lawsuit, which Defendant removed to this Court.

## I.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A court must accept as true all of the factual allegations of the complaint. *Id.* at 679. However, a court is neither bound to accept legal conclusions nor find threadbare recitals of a cause of action. *Id.* The complaint must, at a minimum, "raise a right to relief above the

speculative level[.]" *Jacob v. Mentor Worldwide*, LLC, 40 F.4th 1329 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007).

### III.  ARGUMENT AND CITATION OF AUTHORITY

### A. Defendant Has Never Been Properly Served

A complaint may be dismissed for insufficient service of process. Fed. R. Civ. P. 12(b)(5). Federal Rule of Civil Procedure 4 dictates how process is to be served on a party. When that party is a municipal corporation or local government entity, service must be accomplished by delivering copies of the summons and complaint to the chief executive officer or in a manner prescribed by state law. Fed. R. Civ. P. 4(j)(1)–(2). Georgia law states that service on a city shall be "to the chairman of the board of commissioners, president of the council of trustees, mayor or city manager of the city, or to an agent authorized by appointment to receive service of process." O.C.G.A. § 9-11-4(e)(5).

Georgia courts maintain a very high and exacting standard for completing service on a municipality. It is immaterial whether the documents are given to a person who appears that they may be entrusted with them, or who by their title appears to exercise some authority within the local government entity. *See Aikens v. Brent Scarbrough & Co.*, 287 Ga. App. 296, 298 (2007) (finding individual was not authorized to accept service despite their representation that they were so authorized). In *Molette v. City of Forest Park*, the plaintiff attempted service on the

defendant city by delivering the suit papers to the city attorney. 335 Ga. App. 222, 780 S.E.2d 780 (2015). The Court of Appeals held this was insufficient to perfect service, even in spite of the city charter stating the attorney *may* be responsible for representing the city in litigation. *Id.* at 224. *Compare id. with City of East Point v. Jordan*, 300 Ga. App. 891, 686 S.E.2d 471 (2009) (city charter *explicitly* provided that city attorney was authorized to receive service of process on behalf of the city).

Plaintiff has not served any of the individuals articulated in either the federal or state procedures. Plaintiff attempted service on June 21, 2023, but erred by giving a copy of the complaint and summons to Mrs. Kristin Lester, the assistant city clerk / assistant city manager. (Affidavit of Process Server, R. 1, Exh. F). Mrs. Lester is not the West Point city manager—that title is held by Ed Moon. (Affidavit of Ed Moon, ¶ 4). Nor does Mrs. Lester hold any of the other titles articulated above, and nothing in the City's charter or ordinances designates the assistant city clerk / assistant city manager to accept service. (Affidavit of Ed Moon, ¶ 5). Thus, to date, Defendant has not been properly served with the complaint or summons.

**B. Plaintiff Fails to State a Claim Under the Georgia Whistleblower Act**

The Georgia Whistleblower Act prohibits a public employer from retaliating "against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency[.]" O.C.G.A. § 45-1-4 (d)(2). To state a claim under the Act, a public employee must allege that

(1) she was employed by a public employer; (2) that she made a protected disclosure or objection; (3) that she suffered an adverse employment action; and (4) that there is some causal relationship between the protected activity and the adverse action. *Baptiste v. Mann*, 360 Ga. App. 345, 348, 861 S.E.2d 212 (2021); *Owens v. Propes*, 601 F. Supp. 3d 1360, 1372 (M.D. Ga. 2022). Even assuming for the purposes of this motion that Plaintiff's complaint satisfies the first, third, and fourth elements, it does not and cannot satisfy the second element because Plaintiff did not make a protected disclosure or objection.

Plaintiff alleges she engaged in a protected activity when she objected to her superior's directive to forcibly enter a residence and serve a warrant. She alleges this was a protected activity because it is her belief that such a forced entry was unconstitutional. But Plaintiff is wrong.

The touchstone of analysis under the Fourth Amendment is reasonableness in light of the totality of the circumstances. *Pennsylvania v. Mimms*, 434 U.S. 106, 108–109 (1977) (per curiam) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). This same principle governs the execution of a warrant. *United States v. Ramirez*, 523 U.S. 65, 71 (1998). Generally, law enforcement must knock and announce their presence prior to entering a residence to serve a warrant. *United States v. Banks*, 540 U.S. 31, 36 (2003); *Smith on behalf of Est. of Smith v. Ford*, 488 F. Supp. 3d 1314, 1324 (M.D. Ga. 2020). However, where an exigency exists, such as a danger to the officers

by knocking, or concern that an occupant might destroy evidence, they may force entry within seconds of knocking or not knock at all. *Banks*, 540 U.S. at 39. The Eleventh Circuit has held sufficient exigent circumstances exist to circumvent the knock and announce requirement when officers have knowledge that a suspect or occupant "has or is likely to have a weapon." *Smith*, 488 F. Supp. 3d at 1325 (citing *Santana v. Miami-Dade Cty.*, 688 F. App'x 763, 768 (11th Cir. 2017)).

In non-exigent circumstances, officers must wait a reasonable amount of time after knocking, and if there is no answer, then they may force entry to serve a search warrant. O.C.G.A. § 17-5-27; 18 U.S.C. § 3109; *United States v. Manning*, 140 F. App'x 212, 217 (11th Cir. 2005) ("While police officers are generally required to announce their intent to search before entering closed premises, the Fourth Amendment normally requires little more notice than a knock on the door prior to a forced entry pursuant to a lawfully issued warrant….") (citation omitted); *United States v. Martin*, No. 1:14-CR-00427-ELR, 2015 WL 4664889, at *10 (N.D. Ga. Aug. 6, 2015) ("If the occupants do not admit the officers within a reasonable period of time, the officers may be deemed to be constructively refused admittance, and they may then enter by force."); *United States v. Cintora-Gonzalez*, No. 1:12-CR-00078-ODE, 2012 WL 4403000, at *5 (N.D. Ga. Aug. 10, 2012) (same).

Plaintiff and a team of officers approached the residence in question with a warrant for both the arrest of an armed robbery suspect and a search of weapons he

may have used in the crime. (Plaintiff's Complaint, ₽ 29). Given the dangerous potential of this suspect and the apparent likelihood that he possessed a firearm, it may have been reasonable for the officers to not have knocked on the door at all. *Banks*, 540 U.S. at 39; *Smith*, 488 F. Supp. 3d at 1325. Nonetheless, the officers knocked and received no answer. Several minutes later, having still received no answer, Plaintiff contacted her superior, who directed her to force entry and execute the search pursuant to the warrant. (Plaintiff's Complaint, ¶ 35). Plaintiff refused, stating her belief that it would be unlawful for the officers to enter the home because there was no one home. (Plaintiff's Complaint at ₽ 36). The officers then left the scene without executing the warrant. (Plaintiff's Complaint, ¶¶ 35-37).

Though the precise amount of time that passed is unknown, it is easily inferred that the period of time between the officers' knock and the end of Plaintiffs' phone conversation with her superior satisfies the requirement that officers wait a reasonable amount of time for an occupant to answer the knock before forcing entry. O.C.G.A. § 17-5-27; 18 U.S.C. § 3109; *Manning*, 140 F. App'x 217; Martin, 2015 WL 4664889, at *10; *Cintora-Gonzalez*, 2012 WL 4403000, at *5. In other words, by the time Plaintiff got off the phone, and likely even before then, the officers could have forced entry to execute the search. *See United States v. Wallace*, 931 F. Supp. 1556, 1558 (M.D. Ala. 1996) ("Most courts of appeals have held that continued inaction by a house's inhabitants after an officer's announcement constitutes a

constructive refusal and permits an officer's forcible entry."). In fact, the Georgia code specifically authorizes officers to use "all necessary and reasonable force" to execute a search after giving an unanswered verbal notice. O.C.G.A. § 17-5-27(b).

Yet Plaintiff refused to execute the warrant. But this was neither heroism nor a protected activity—Plaintiff did not object to an unlawful act. O.C.G.A. § 45-1-4; *Baptiste*, 360 Ga. App. at 348. Rather, Plaintiff defied a lawful directive of her superior and obstructed a time-sensitive search for firearms and an armed and dangerous suspect. For this, she was terminated.

More, Plaintiff specifically, yet wrongly cites to O.C.G.A. § 17-5-27 as prohibiting entry into the residence because no one was home. But that statute reads otherwise:

> All necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant *if*, after verbal notice or an attempt in good faith to give verbal notice by the officer directed to execute the same of his authority and purpose… The person or persons within the building or property or part thereof refuse to acknowledge and answer the verbal notice or the presence of the person or persons therein is unknown to the officer; or [t]he building or property or part thereof is not then occupied by any person.

O.C.G.A. § 17-5-27(2) and (3) (emphasis added).

Ultimately, Plaintiff's claim under the Georgia Whistleblower Act must be dismissed because she did not engage in any protected activity. And, given the absolute clarity of both state and federal law on the issue of entry into residences for purpose of executing a search (or arrest) warrant, it most certainly cannot be said

8

that Plaintiff had "reasonable cause to believe (the order she ignored) [was] in violation of or noncompliance with a law, rule, or regulation." O.C.G.A. § 45-1-4(c)(3).

### C. Plaintiff Fails to State a Claim Under Title VII

"To make out a prima facie case of [ ] discrimination a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985). Plaintiff's Complaint fails to clear the fourth hurdle, making no effort to even allege the other, non-terminated officers were similarly situated to her in any material respect, let alone, as required, *in all material respects. Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019).

In fact, instead of alleging the other officers on the scene were similarly situated, her team that night "lacked the experience and training necessary to forcibly enter a home safely," (Plaintiff's Complaint, ¶ 36), whereas Plainitff is a highly decorated and received officer with over twenty (20) years of experience. (Plaintiff's Complaint, ¶¶ 14-23).

But, as the Eleventh Circuit has said many times, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine*

9

*qua non* for a plaintiff to survive" a dispositive motion in an employment discrimination case. Accordingly, Plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (on summary judgment). Even without similarly situated comparators, Plaintiff can survive dispositive treatment if she pleads circumstantial evidence of discrimination.

To wit, Plaintiff can survive dispositive treatment if she pleads "a convincing mosaic of 'circumstantial evidence' to allow for an inference of discrimination." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (citation omitted). A "convincing mosaic" may be shown by evidence that demonstrates, among other things, (1) "suspicious timing, ambiguous statements …, and other bits and pieces from which an inference of discriminatory intent might be drawn," (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual. *Id*. (citation omitted).

Plaintiff's Complaint, instead of presenting a convincing mosaic of discrimination, presents a celebration of favorable treatment from the City. For example, she was specifically "recruited" from another law enforcement agency (Plaintiff's Complaint, ¶ 15); received the highest ratings for overall job knowledge and performance in 2020 (Plaintiff's Complaint, ¶ 16); received written accolades from Captain Carter (who terminated her) who stated Plaintiff was "well-known

10

within the public and maintain[ed] a neat public appearance," was willing to work with any officer in the police department, displayed pride in her work and strived for perfection, and said "she brings a lot to the table and doesn't mind sharing it with other officers and command staff alike" (Plaintiff's Complaint, ¶ 17); earned favorable performance evaluations, with Captain Carter again noting Plainitff "exceed[s] standards with respect to compliance with regulations and work instructions," and specifically noting her achievements in assisting fellow employees, treatment of others, and "willing to go beyond what is expected of her." (Plaintiff's Complaint, ¶ ¶18-19); and received a commendation for deescalating a suicide threat, and again receiving accolades from Captain Carter. (Plaintiff's Complaint, ¶¶ 20-23).

As for the allegations Plaintiff points to in order to paint a convincing mosaic of circumstantial evidence of gender discrimination, all Plaintiff can point to is a vague and unsubstantiated legal conclusion there was a pattern of "disparate discipline against female officers" (Plaintiff's Complaint, ¶ 24); a single incident where she was denied the opportunity to be officer-in-charge on a ride along because she was a woman (Plaintiff's Complaint, ¶ 24); and language, obviously not directed at her, that the City was "never gonna hire lesbians" because of a prior discrimination suit. (Plaintiff's Complaint, ¶ 25). Plaintiff does not state that Captain Carter had anything to do with these incidents.

11

These vague, minimal and conclusory allegations in an effort to weave of a convincing mosaic of circumstantial evidence leading to Plaintiff's termination do not clear the applicable *Iqbal* and *Twombly* standards for stating such a claim. This is not like *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) (race), where the employee offered compelling evidence of his employer's motive to treat white employees less favorably, numerous incidents where the discipline of white employees varied considerably from that of black employees, and a "discipline 'matrix'" created by the employer that tracked the discipline and race of employees. *Smith*, 644 F.3d at 1329–46. The Eleventh Circuit ruled that record contained sufficient circumstantial evidence that the employer fired the employee because he was white. *Id.* at 1326–27.  Rather, this case is far more like *Connelly v. Metro Atlanta Rapid Transit Authority,* 764 F.3d 1358, 1364-65 (2014) (race) in which there were merely three incidents in which the offending supervisor called Plaintiff, who was white, a mean black bitch and commented that King socialized with other black employees. *See Dukes v. Shelby Cty. Bd. Of Educ.,* No. 18-11081 (11th Cir. Mar. 26, 2019) (race; insufficient facts to show convincing mosaic); *Cooler v. Layne Christensen Co.,* No. 16-17773 (11th Cir. Oct. 10, 2017) (same); *Moultrie v. Ga. Dep't of Corrs.*, No. 15-14854 (11th Cir. Aug. 10, 2017) (same); *Johnson v. Birmingham Bd. Of Educ.,* Case No. 2:18-CV-1262-CLM (N.D. Ala. Sep. 1, 2020) (same; "These facts, individually and collectively, do not create a 'convincing

mosaic' of intentional discrimination, but an assortment of minimally probative miscellanies.").

Finally, the City notes that Plaintiff does not tie her alleged instances of gender discrimination under the convincing mosaic theory of liability to Captain Carter. (Plaintiff's Complaint, ¶¶ 24-25). Absent that, this alleged evidence cannot be said to support a circumstantial inference that Captain Carter discriminated on the basis of gender in terminating Plaintiff. *See Holifield v. Reno*, 115 F.3d 1555, 1563-64 (11th Cir. 1997) (per curiam) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." (quotation omitted))."

## IV.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests this honorable Court dismiss the complaint in its entirety.

Respectfully submitted this 21st day of July, 2023.

**HALL BOOTH SMITH, P.C.**

/s/ *Henry M. Cleland*
Phillip E. Friduss
Georgia Bar No. 277220
Henry M. Cleland
Georgia Bar No. 663931

*Counsel for Defendant City of West Point*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel: (404) 954-5000
Fax: (404) 954-5020
pfriduss@hallboothsmith.com
hcleland@hallboothsmith.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(B).

This 21st day of July, 2023.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| ELIZABETH WEGIENKA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF WEST POINT, GEORGIA,<br><br>    Defendant. | Civil Action File No.<br><br>3:23-cv-00141-TCB-RGV |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the above and foregoing **DEFENDANT CITY OF WEST POINT'S MOTION TO DISMISS** upon Plaintiff by filing a copy with the Court's electronic filing system, CM/ECF, which automatically notifies counsel of record:

Brian J. Sutherland
Rachel Berlin Benjamin
Beal Sutherland Berlin & Brown, LLC
945 East Paces Ferry Rd NE, Suite 2000
Atlanta, Georgia 30326
brian@beal.law
rachel@beal.law

[*signature on following page*]

16

Respectfully submitted this 21st day of July, 2023.

**HALL BOOTH SMITH, P.C.**

/s/ *Henry M. Cleland*
Phillip E. Friduss
Georgia Bar No. 277220
Henry M. Cleland
Georgia Bar No. 663931

*Counsel for Defendant City of West Point*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel: (404) 954-5000
Fax: (404) 954-5020
pfriduss@hallboothsmith.com
hcleland@hallboothsmith.com